IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LAKISHA D. JACKSON,**

 **Plaintiff,**

 v.

            Civil Action 2:14-cv-801
            Judge Algenon L. Marbley
            Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

 **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Lakisha D. Jackson, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15) and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

### I. BACKGROUND

In her Statement of Errors, Plaintiff advances two errors. Plaintiff first asserts that remand is required because the administrative law judge erroneously failed to mention, review, consider, or discuss the opinion of an examining source. Second, Plaintiff submits that the

administrative law judge's failure to adequately address Plaintiff's limitations in connection with her anxiety disorder requires remand. The Undersigned limits her discussion to evidence bearing on these contentions of error.

Plaintiff filed her application for Disability Insurance Benefits and Supplemental Security Income on September 27, 2011, alleging that she became unable to work in June 2011 due to depression, anxiety, and high blood pressure. (R. at 166–75, 198). Plaintiff's application was denied initially and upon reconsideration. (R. at 72–116.) Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge John L. Shailer ("ALJ") held a hearing on March 8, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 33–60.)

On April 8, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16–28.) In reaching this decision, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to lift and carry 25 pounds occasionally and 15 pounds frequently with no limitations on sitting and capable of standing and/or walking for 3 hours at a time for six hours of an 8 hour workday and with the following nonexertional limitations: The claimant could occasionally interact with others. No fast-paced work or strict quota based work.

(R. at 23.)

In connection with Plaintiff's mental RFC determination, the ALJ discounted Plaintiff's credibility. The ALJ considered Plaintiff's allegations of disabling anxiety and panic attacks and her testimony that she was often irritable and would argue with her brother, that she no longer has friends and does not socialize, that she does not get out of bed two-to-three times per week due to panic attacks, and that her medication for anxiety provides no relief. (R. at 23–24.) He

concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her allegations were not entirely credible. (R. at 24.)

Within his credibility assessment, the ALJ pointed out that Plaintiff had not sought consistent, supportive care for her allegedly disabling impairments and that the record reflected that she failed to comply with treatment recommendations or follow-up recommendations such as counseling, medication consultations, or employment rehabilitation. (*Id*.) The ALJ added that Plaintiff "was often noncompliant with medication, either refusing to try medication or unilaterally discontinuing medication without discussing these issues with her doctor." (*Id*.) The ALJ also noted that Plaintiff's "subjective allegations were rarely, if ever objectively verified," citing as an example that Plaintiff's emergency room trips all resulted in discharges in stable conditions without any significant abnormalities noted. The ALJ offered specific examples of incidents in which the physician's notes indicated that Plaintiff's presentation was inconsistent with her subjective symptoms as well as inconsistent with the objective findings.

The ALJ further discussed Plaintiff's treatment records, noting that in September 2011, she reported that she experienced panic attacks that "come[] and go[]," which prompted her treating physician to prescribe two medications. (R. at 24.) The ALJ noted that at Plaintiff's October 2011 follow-up visit, she did not complain of any anxiety symptoms and that at a December 2011 visit, she reported that she did not take one of the prescribed medications because she was afraid of the side effects. (*Id.*)

The ALJ also discussed Plaintiff's November 2011 consultative examination with psychologist A.E. Virgil in which Dr. Virgil noted that despite Plaintiff's self-report of anxiety-disorder systems, she did not present with any such symptoms during the examination. (R. at 25

(citing R. at 277–82.))  He also discussed Plaintiff's January 2012 presentation to the Columbus Area, Inc. for an intake assessment in which the clinician assessed major depressive disorder and panic disorder based upon Plaintiff's presentation and recommended follow-up counseling, medication consult, diet modification, and employment services.  (R. at 25.)  The ALJ pointed out that a June 2012 notation from Columbus Area, Inc. reflects that Plaintiff never returned or followed through on any of the recommendations.

      The ALJ next noted that in January 2013, Plaintiff reported to her treating physician that her anxiety medications were not effective and that she had seen a psychiatrist and refused medication.  The ALJ pointed out that the record contains no records from any such psychiatrist and that Plaintiff failed to mention such a consultation at the hearing.

      The ALJ assigned "significant weight" to the opinions of examining source Dr. Virgil, finding his opinions to consistent with and well-supported by the objective medical evidence.  (R. at 26.)  The ALJ also assigned "significant weight" to the state-agency psychological consultants' mental assessments, again finding that these assessments were consistent with and well supported by the evidence of the record as a whole.  (R. at 27.)  The ALJ also considered a form completed by examiner John Tilley in November 2011 that Plaintiff submitted after the administrative hearing.  (R. at 23.)  The ALJ concluded that the information reflected on the form did not warrant a change in his RFC determination.  He explained as follows:

> Significantly after the hearing in this matter, [Plaintiff] submitted exhibit 11F which is dated November 21, 2011, and which includes both the text related to [Plaintiff] by examiner John Tilley, and a check sheet.  The check sheet has numerous moderate and marked indications.  However, a review of the test which leads to the checked boxes, reveals very little in the way of severely or significantly impaired function due to [Plaintiff's] psychological problems.  After reviewing new Exhibit 11F, the undersigned finds that no changes in the residual functional capacity are required.

4

(R. at 23.)

Based upon Plaintiff's allegations of anxiety and irritability that he found credible, the ALJ ultimately included mental limitations in his RFC determination that were greater than those limitations opined by Dr. Virgil or the state-agency doctors, explaining that he found her to be more limited in social functioning.  He rejected, however, Plaintiff's representative's contention that Plaintiff would require additional limitations due to her alleged frequency and duration of panic attacks, explaining that "the summarized objective evidence does not corroborate the [alleged] intensity or frequency of panic attacks."  (R. at 27.)

The ALJ relied upon the VE's testimony to conclude that jobs exist in significant numbers in the national economy that Plaintiff can perform.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 27–28.)

On June 24, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-3.)  Plaintiff then timely commenced the instant action.

## II.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.     ANALYSIS

**A.     The ALJ's Consideration of the Opinion Evidence**

Plaintiff first submits that the ALJ's failure to mention the opinion of a examining source Dr. Tilley requires remand.  Plaintiff asserts that the ALJ "either entirely neglected or entirely disregarded" Dr. Tilley's opinion "when he failed to include any mention of Dr. Tilley's examination, evaluation and medical conclusions or medical opinion in his decision."  (Pl.'s Statement of Errors 8–9, ECF No. 11.)  The Commissioner counters that the ALJ properly considered and reasonably weighed Dr. Tilley's opinion.  In her Reply, Plaintiff concedes that

the ALJ did mention Dr. Tilley, but contends that the ALJ failed to properly evaluate the opinion and provide a sufficiently lengthy discussion.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii). Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist

7

who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *cf. Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times.  If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

In the instant action, the Undersigned finds that the ALJ did not err in his consideration and evaluation of the opinion evidence.  As discussed above and conceded by Plaintiff in her Reply, the ALJ did, in fact, consider and evaluate Dr. Tilley's opinion.  Moreover, he provided good reasons for concluding that the opinion did not impact his RFC determination.  Specifically, the ALJ found that the narrative portion of the opinion "reveals very little in the way of severely or significantly impaired function."  (R. at 23.)

Contrary to Plaintiff's apparent contention, the ALJ was not required to analyze each of Dr. Tilley's checked boxes on the worksheet portion of his Mental Functional Capacity Assessment.  As the United States Court of Appeals for the Sixth Circuit recently explained, the check-the-box portion "is merely a worksheet and does *not* constitute the RFC assessment." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 563 (6th Cir. 2014) (quoting POMS DI 24510.060 Mental Residual Functional Capacity Assessment)).  The medical source must explain his or her conclusions indicated in the worksheet portion in the narrative section "in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id*.  As the ALJ pointed out, the narrative section of Dr. Tilley's opinion does

not set any workplace limitations on her mental capacities or limitations.  (R. at 23, 399.) Moreover, his narrative portion appears to be inconsistent with some of his worksheet notations. For example, Dr. Tilley noted that upon mental status examination, Plaintiff's "[a]ppearance and behavior were unremarkable" and that she displayed "[n]o overt abnormalities" with the exception of an affect described as a "mixture of anxiousness and irritability."  (R. at 399.)  Dr. Tilley also noted that Plaintiff was "oriented in all spheres" and that her "[t]hought processes were clear and coherent."  (*Id*.)

In addition, the ALJ was not required to credit Dr. Tilley's checking of a box reflecting his view that Plaintiff was "unemployable" given that this is an issue reserved for the Commissioner and also because Dr. Tilley noted that he expected her mental limitations to resolve within nine-to-eleven months.  (R. at 399); SSR 96–5p, 1996 WL 374183, at *5 (1996) ("Medical sources often offer opinions about whether an individual ... is 'disabled' or 'unable to work[.]' . . .  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner."); *cf. BoulisGasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011) (noting that, to meet the durational requirement, an impairment must have lasted or be expected to last for a continuous period of at least twelve months).

Moreover, contrary to Plaintiff's assertion, the ALJ did not err in failing to expressly include in his decision a discussion of each of the factors set forth in 20 C.F.R. § 404.1527(c). *See Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c) for weighing medical

opinion evidence within the written decision).  As discussed above, the ALJ provided sufficient discussion to allow Plaintiff to understand why Dr. Tilley's opinion did not impact his RFC assessment.

Finally, the Undersigned finds that the ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence.  The ALJ makes clear that what sources he credited in formulating his RFC and his bases for doing so.  Notably, Plaintiff does not challenge the ALJ's credibility determination or his assignment of significant weight to the opinions of examining source Dr. Virgil and the mental assessments of the state-agency psychological consultants.

Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

B.      The ALJ's Consideration of Plaintiff's Anxiety

Plaintiff next asserts that the ALJ failed to adequately considered her limitations in connection with her anxiety disorder.  More specifically, Plaintiff contends that the ALJ should have included a limitation into her RFC to account for unscheduled, hour-long breaks throughout the work week to accommodate her alleged panic attacks.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  In formulating an RFC an ALJ is only required to incorporate those limitations he or she finds credible.  *See, e.g.*, *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 ("Because the ALJ found

10

that [the medical source's] assessment of [the claimant's] limitations was not credible, he was not required to incorporate the limitations assessed by her into his RFC determination." (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

In the instant case, as discussed above the ALJ did, in fact, consider Plaintiff's allegations of disabling and anxiety and panic attacks.  He did not, however, find her allegations to be fully credible and provided ample discussion explaining his bases for discounting her credibility.  (R. at 27 ("[T]he summarized objective evidence does not corroborate [Plaintiff's alleged] intensity or frequency of panic attacks.".))  Significantly, Plaintiff does not challenge the ALJ's credibility assessment.  Given that the ALJ did not find Plaintiff's allegations concerning disabling panic attacks to be credible, he did not err in failing to include a limitation into her RFC to account for unscheduled, hour-long breaks throughout the work week.

Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## IV.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V.   PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: August 12, 2015                                     /s/ *Elizabeth A. Preston Deavers*
                                                          Elizabeth A. Preston Deavers
                                                          United States Magistrate Judge