IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAKISHA D. JACKSON, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:14-cv-801 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | Magistrate Judge Deavers |
| | : | |
| Defendant. | : | |

## <u>OPINION & ORDER</u>

This matter is before the Court on the Plaintiff's Objection (Doc. 18) to the Magistrate Judge's August 12, 2015 **Report and Recommendation** (Doc. 17), recommending that the Court overrule the Plaintiff's Statement of Errors (Doc. 11) and affirm the Commissioner's decision. Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **SUSTAINED** and the Court **REJECTS** the Magistrate Judge's **Report and Recommendation**. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this decision.

## I.    BACKGROUND

In her objection to the Magistrate Judge's Report and Recommendation, the Plaintiff argues that the Magistrate Judge was incorrect in determining that the ALJ's discussion of the opinions of Dr. John Tilley, Psy.D, was not procedurally deficient. Dr. Tilley psychologically evaluated the Plaintiff on one occasion for the Ohio Department of Job and Family Services. The procedural and substantive facts of this case were set forth fully in the Magistrate Judge's Report and Recommendation. *Jackson v. Comm'r of Soc. Sec.,* No. 2:14-CV-801, 2015 WL 4748007

1

(S.D. Ohio Aug. 12, 2015). This Court will include those facts necessary for the resolution of Plaintiff's objection.

Plaintiff Lakisha Jackson filed her application for a Disability Insurance Benefits and Supplemental Security Income on September 27, 2011, alleging disability beginning June 1, 2011 for depression, anxiety and high blood pressure. Her application was denied initially, and upon reconsideration. The Administrative Law Judge ("ALJ") held a hearing on March 8, 2013, at which Plaintiff, represented by counsel, appeared and testified.

After the hearing, Plaintiff submitted a form completed by Dr. John Tilley, Psy.D., who examined her on November 21, 2011. The form is entitled "Ohio Department of Job and Family Services Mental Functional Capacity Assessment." At Section II of the form, which required Dr. Tilley to rate 20 of the Plaintiff's mental abilities, Dr. Tilley rated Plaintiff "moderately limited" in the ability to: remember locations and work-life procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers of peers without distracting them or exhibiting behavioral extremes; be aware of normal hazards or take appropriate precautions; set realistic goals or make plans independently of others. He rated her "markedly limited" in the ability to: perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; travel in unfamiliar places or use public transportation.

At question 21, the form asks "what observations and/or medical evidence led you to your findings in question 1-20?" Dr. Tilley states that he based his evaluation upon a personal interview, a mental status examination, review of the results of the Medical and Behavioral Health Screen, and a review of available records. Dr. Tilley provides an employment history of the plaintiff, noting she quit her most recent job in association with a panic attack. While she has held other employment for up to a year, she has quit other jobs as a result of her panic attacks. He notes that her family physician has prescribed her Paxil, but she has never received counseling.

Then, Dr. Tilley details the results of a mental status examination, stating that Plaintiff's "[a]ppearance and behavior were unremarkable" and that she displayed "[n]o overt abnormalities with respect to expressive or receptive language functioning. Mood was described as generally anxious. Affect was a mixture of anxiousness and irritability. She seemed easily frustrated." She denied suicidal and homicidal ideation, or harm to herself or others. He found no signs of delusional beliefs or hallucinations. Further, Dr. Tilley concluded that her "[j]udgment did not appear markedly impaired," that "her reasoning abilities seems intact," and that her "cognitive processes (e.g. attention, concentration) did not seem overtly compromised." He diagnosed her with Panic Disorder with Agoraphobia, and deemed her "unemployable" with the expectation that her limitations would last between 9 months and 11 months.

On April 8, 2013 the ALJ issued a decision denying benefits. In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disabilities benefits claim. *See* 20 C.F.R. § 404.1520.[1] The ALJ determined that Plaintiff met the insured status

---

[1] The five sequential steps are as follows:

requirements of the Social Security Act through September 30, 2015. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Plaintiff had the severe impairments of hypertension, borderline intellectual functioning, anxiety and depression. At step three, however, the ALJ determined that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Significantly, at the end of his analysis at step three, the ALJ wrote the following concerning Dr. Tilley's opinions:

> Significantly, after the hearing in this matter, the claimant submitted exhibit 11F which is dated November 21, 2011, and which includes both the text relating to the claimant by the examiner John Tilley, and a check sheet. The check sheet has numerous moderate and marked indications. However, a review of the text which leads to the checked boxes, reveals very little in the way of severely or significantly impaired function due to the claimant's psychological problems.

---

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

20 C.F.R. § 404.1520(a)(4).

> After reviewing new Exhibit 11F, the undersigned finds that no changes in the residual functional capacity are required.

*Id*. at 23.

Prior to step four[2], the ALJ concluded that Plaintiff had the following mental residual functioning capacity ("MRFC"):[3]

> The claimant could occasionally interact with all others. No fast-paced or strict quota based work.

(R. at 23). In reaching this conclusion, the ALJ discounted Plaintiff's credibility pointing out that Plaintiff had not sought consistent, supportive care for her allegedly disabling impairments and that the record reflected that she failed to comply with treatment recommendations or follow-up recommendations such as counseling, medication consultations, or employment rehabilitation. The ALJ also noted that Plaintiff's "subjective allegations were rarely, if ever objectively verified," and were somewhat inconsistent in her reports to doctors.

Also in reaching this conclusion, the ALJ assigned weight to each respective physician's opinion; he accompanied each assignment of weight with a thorough analysis explaining his rationale for the weight assigned. The ALJ assigned "significant weight" to the opinions of examining source Dr. Virgil, finding his opinions to consistent with and well-supported by the objective medical evidence. (R. at 26.) The ALJ also assigned "significant weight" to the state-agency (non-examining) psychological consultants' mental assessments, again finding that these assessments were consistent with and well supported by the evidence of the record as a whole.

---

[2] "Before we go from step three to step four, we assess your residual functional capacity.... We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n. 3 (6th Cir. 2009).

[3] As the Plaintiff objects only to the Magistrate Judge's decision concerning portions of the ALJ's decision concerning her MRFC, this Court includes only those portions of the RFC and those facts pertaining to her MRFC.

(R. at 27.) The ALJ did not mention Dr. Tilley's evaluation again, nor did he weigh his opinions along with the other physicians of record.

Based upon Plaintiff's allegations of anxiety and irritability that he found credible, the ALJ ultimately included mental limitations in his RFC determination that were greater than those limitations opined by Dr. Virgil or the state-agency doctors, explaining that he found her to be more limited in social functioning. He rejected, however, Plaintiff's representative's contention that Plaintiff would require additional limitations due to her alleged frequency and duration of panic attacks, explaining that "the summarized objective evidence does not corroborate the [alleged] intensity or frequency of panic attacks." (R. at 27.)

Thus, at step four, the ALJ determined that Plaintiff could perform past work as a general cleaner. Because the vocational expert determined that such job exists in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. at 27–28.)

The Appeals Council denied Plaintiff's request for review on June 24, 2014, making the ALJ's decision final. Plaintiff filed the instant action in this Court on July 9, 2014.

On October 6, 2014 the Plaintiff filed a statement of specific errors, in which she advanced two errors. Plaintiff first asserted that remand was required because the ALJ erroneously failed to mention, review, consider, or discuss the opinion of Dr. Tilley. Second, Plaintiff submitted that the ALJ's failure to adequately address Plaintiff's limitations in connection with her anxiety disorder required remand.

On August 12, 2015, the Magistrate Judge issued a Report and Recommendation, overruling the Plaintiff's statement of specific errors. (Doc. 17). The Magistrate Judge concluded that the ALJ did not ere in his consideration and evaluation of Dr. Tilley's opinions. First, the

Magistrate Judge noted that the Plaintiff conceded that the ALJ discussed Dr. Tilley's opinion at step three. Then, the Magistrate Judge determined that the ALJ's discussion of Dr. Tilley's opinions in the paragraph at the end of step three met the goal of 20 C.F.R. § 416.927(e)(2)(ii) and was otherwise supported by substantial evidence. Thus, the Magistrate found that the ALJ's failure to provide explicitly the weight assigned to Dr. Tilley's opinion between steps three and four was harmless error.

The Plaintiff objected to the Report and Recommendation on August 26, 2015, raising an objection only to the Magistrate Judge's analysis of Dr. Tilley's opinion (Doc. 18). The Commissioner did not file a response.

## II.    STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). This Court's review "is limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), *reh'g denied* (May 2, 2013).

### III.   ANALYSIS

Plaintiff contends that the Magistrate Judge erred in finding that the ALJ's discussion of Dr. Tilley's opinions was not erroneous because: (1) the Magistrate Judge relied on regulations and case law concerning the guidelines for evaluating State agency consultative examiners' opinions, while Dr. Tilley performed an evaluation for the Ohio Department of Job and Family Services; and (2) the Magistrate Judge erred in finding the ALJ provided a procedurally sufficient evaluation of Dr. Tilley's opinions regarding Plaintiff's specific mental limitations.

Beginning with the first part of Plaintiff's objection, the regulations define the term "nontreating source," such as Dr. Tilley, to include both "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you," and "an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source." 20 C.F.R. §§ 404.1502, 416.902. Accordingly, the case law regarding the proper procedure to evaluate

8

nontreating sources should apply equally both to nontreating sources who are and who are not consultative examiners from the Agency, unless, of course, the court distinguishes the nontreating source specifically because he or she is a consultative examiner. Further, a sister Court has noted that

> [i]n administering the Medicaid program, the Ohio Department of Job and Family Services ("ODJFS") makes disability determinations using Social Security's own standards and process. Ohio Rev.Code § 5101:1–39–3(B)(6) ("The [Centers for Medicare and Medicaid Services] unit determines blindness and disability in accordance with SSA policy. The SSA sets forth a five-step sequential evaluation process for determining whether or not an individual is disabled."). While these forms may not then be "intend[ed] to ... determine eligibility for benefits under the Social Security Act," they are certainly intended to determine disability under the Act which was the relevant inquiry before the ALJ. In fact, the forms themselves do not elicit opinions specific to issues of Medicaid eligibility, they evidence medical opinions as to vocationally relevant functional limitations.

*Clemmer v. Comm'r of Soc. Sec.*, No. 3:13-CV-40, 2013 WL 6158372, at *12 (S.D. Ohio Nov. 25, 2013) (finding error in the ALJ's discounting of specific functional restrictions in the opinions of treating physicians contained in ODJFS forms simply because they were contained in ODJFS forms). Thus, while the ODJFS form differs from the form that Agency consultative examiners utilize, both forms serve a similar purpose pursuant to nearly identical standards and processes. Accordingly, the case law concerning the procedure for evaluating the opinions of consultative examiners on which the Magistrate Judge relied is not per se distinguishable simply because Dr. Tilley filled out an ODJFS form independent of the Agency.

Moving to the second part of Plaintiff's objection, this Court must review the regulations concerning the proper procedure for evaluating nontreating source opinion evidence. First and foremost, this Court emphasizes that the Commissioner's regulations require the ALJ to consider all medical opinions in the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). As part of the Commissioner's consideration of all opinion evidence, he must also discuss the weight he

9

assigns to such opinions. *See id.*, §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."); *See also*, *e.g.*, SSR 96-6P (S.S.A. July 2, 1996) ("Administrative law judges and the Appeals Council may not ignore these opinions [of State Agency medical consultants] and must explain the weight given to these opinions in their decisions.").

On the basis of these regulations, the Court cannot agree that the ALJ's discussion of Dr. Tilley's evaluation and opinions at the end of step three satisfied the procedural requirements for assigning weight to a nontreating (but examining) physician's opinions. First, the ALJ's discussion does not assign any particular degree of weight to Dr. Tilley's opinions. Even if read generously, at most the ALJ explicitly rejects in their entirety Dr. Tilley's opinions concerning Plaintiff's severe and marked limitations. He does not mention, however, let alone assign weight to, Dr. Tilley's opinions concerning Plaintiff's moderate impairments for the purpose of fashioning Plaintiff's mental RFC. Those include, to name a few, moderate limitations in the ability to remember locations and instructions, maintain concentration for extended periods of time, be aware of hazards, make plans and set goals, and a number of moderate social limitations. Because the Plaintiff's mental RFC—"The claimant could occasionally interact with all others. No fast-paced or strict quota based work"—fails to encompass many of these moderate limitations, the ALJ's error is not harmless. Further, simply because the ALJ concluded that the text portion of Dr. Tilley's assessment did not support his findings that certain

10

limitations were severe does not mean that the limitations he found to be severe could not be better categorized as moderate.

The ALJ's focus on rejecting Dr. Tilley's findings only concerning severe and marked limitations is related to the fact that the ALJ's only discussion of Dr. Tilley's assessment is placed at the end of step three in the analysis. This is understandable because the purpose of step three is to determine whether the claimant's severe impairments or combination of impairments meet or medically equal in severity one of the listed impairments.[4] The ALJ's discussion of Dr. Tilley's assessment, therefore, is not in the portion of the decision where the ALJ assigned explicit weight to all of the other medical opinions—i.e., before step four, to assist the ALJ in developing the Plaintiff's mental RFC. Thus, because his analysis of Dr. Tilley's opinions occurs at step three, the ALJ emphasizes only that although Dr. Tilley's check sheet has "numerous moderate and marked limitations...a review of the text which leads to the checked boxes, reveals very little in the way of severely or significantly impaired function due to the claimant's psychological problems." As already stated, however, such an analysis says nothing regarding the weight which should be assigned to Dr. Tilley's opinions concerning Plaintiff's limitations for the purpose of formulating the RFC. In other words, the final sentence of the discussion of

---

[4] Importantly, in his decision, the ALJ explains that his analysis of Plaintiff's limitations at steps 2 and 3 is distinct from the analysis of her limitations at steps 4 and 5:

> The limitations identified in the "paragraph B" ("paragraph D" criteria of listing 12.05) criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluations process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires more detailed assessment by itemizing various functions contained in the broad categories found in Paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

11

Dr. Tilley's evaluation—"After reviewing Exhibit 11F, the undersigned finds that no changes in the residual functional capacity are required"—has no clear connection to the preceding step three analysis.

The Magistrate Judge relies on two unpublished Sixth Circuit decisions that held that the ALJ's failure to provide the weight assigned to a consultative examiners' opinion and any discussion regarding the weight assigned was harmless error. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005), and *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467-69 (6th Cir. 2004). This Court finds both cases distinguishable.

In *Pasco*, the Court found that the ALJ's failure to mention the report of a consultative neurologist was harmless because: (1) the consultative neurologist evaluated the claimant only once; and (2) the consultative neurologist described every impairment as mild, and the Plaintiff failed to articulate how the opinion of the consultative neurologist that Plaintiff had a 19% physical impairment supported a claim for disability. 137 F. App'x at 839.  In contrast, in this case, Dr. Tilley describes a number of Plaintiff's impairments as severe and moderate, and ultimately determines that the Plaintiff is unemployable. Even though the ALJ is tasked with the ultimate determination of disability, Dr. Tilley's opinions should still inform the ALJ's final determination.

In *Dykes*, like in this case, the ALJ briefly mentioned the existence of an assessment by a consultative examiner, but did not assign it weight or give a rationale for rejecting it. 112 F. App'x at 468. The Court found such an error harmless because the record contained opinions from at least three other treating physicians that supported the ALJ's finding of no disability, and which contradicted the opinions of the omitted consultative examiner. *Id*. Further, the Court found that the consultative examiner's own opinions did not support a finding of disability. *Id*. In

contrast, in this case, the only other psychologist of record to have examined Plaintiff is another non-treating examiner, who found Plaintiff's limitations less severe than Dr. Tilley found. The only other opinions on which the ALJ relies when fashioning the RFC are State-agency (non-examining) psychological consultants', who depended on the non-treating examiner's opinions, but did not review Dr. Tilley's opinions because they were not yet in the record.

This Court follows, instead, the rationale in *Johnson v. Astrue*, which found that because the ALJ's residual functional capacity was inconsistent with the opinions of two nonexamining state psychologists, and the ALJ ignored those opinions and failed to articulate the weight proscribed to them, the claimant was prejudiced on the merits. *See, e.g.,* 2010 WL 5559542 (N.D. Ohio Dec.3, 2010), *adopted and affirmed* 2010 WL 5478604 (N.D. Ohio Dec.30, 2010) (HOLDING); *see also Rabbers*, 582 F.3d at 651 (holding that even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"), and *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."). The *Johnson* Court found that since certain restrictions encompassed in the ignored opinions were not included in the Plaintiff's RFC, the case required remand in order for the ALJ to properly assess all of the claimant's limitations, in order to determine if the opined restrictions would preclude the claimant from employability. This Court agrees, and adds that remanding a case for a reassessment of the RFC to include a consideration of ignored evidence is not a mere formality as it would

> propel [this Court] into the domain which Congress has set aside exclusively for
> the administrative agency, if [it] were to determine the jobs available to [Plaintiff]

13

> based upon her limitations … Instead, the ALJ must make this determination. Where an administrative agency alone is authorized to make a particular determination, the reviewing court must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (citations and quotation marks excluded).

But, even if this Court assumes the ALJ granted no weigh to any of Dr. Tilley's opinions, this Court also does not agree that the limited discussion provided by the ALJ fulfilled the ALJ's procedural obligation under § 416.927. A non-treating source's opinions, including a nontreating but examining source's, are never assessed for "controlling weight." *Gayheart*, 710 F.3d at 376. Thus, the procedural requirement that the ALJ must give "good reasons" in his decision for the weight it gives a claimant's treating source does not apply to nontreating sources. *Ealy*, 594 F.3d at 514. Instead, for nontreating sources, the Commissioner weighs these opinions based on a number of factors including: the examining relationship (or lack thereof), specialization, consistency, and supportability. *Id.*; §§ 404.1527(c), 416.927(c). Other factors "which tend to support or contradict the opinion" may also be considered in assessing any type of medical opinion. *Gayheart*,710 F.3d at 376; § 404.1527(c)(6). Further, under § 416.927(c)(1), the regulations direct administrators to "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *See Wilson v. Comm'r of Soc. Sec.*, No. 14-5968, 2015 WL 4385281, at *3 (6th Cir. July 16, 2015) ("Social Security Administration regulations direct administrators ... to give more weight to the opinions of sources who have actually examined the claimant than to the opinions of sources who have not done so.").

The Sixth Circuit in *Ealy* provides guidance regarding the degree to which an ALJ must fulfill his or her procedural obligation when determining how much weight to grant to non-treating source opinion evidence based on the § 404.1527(c) factors. 594 F.3d at 514-15. In *Ealy*, the Plaintiff objected to the ALJ's adoption of a nonexamining source's opinion over the opinion of a nontreating but examining source's opinion. As a result of granting more weight to the nonexamining source's opinion, the ALJ rejected the nontreating but examining sources opinion that the plaintiff would have marked limitation in tolerating everyday work stress. The Sixth Circuit upheld the ALJ's determination, concluding that the "record shows that the ALJ considered the relevant factors in its determination" to credit one doctor over the other. *Id*. at 514. Then, the Court reviewed all of the rationale the ALJ provided, including the ALJ's findings that: some of the examining doctor's conclusions were not fully supported by her own materials or the record as a whole; his report contained little information on the relevant impairment at issue; lack of any evidence on the record to corroborate certain opinions, such as the patient's failure to seek any treatment and ability to function in daily activities. *Id*. at 514-15. Thus, based on the reasons articulated by the ALJ, the Court found the decision not to credit the examining source's opinions was based on substantial evidence. *Id*. at 515.

While this Court agrees with the Magistrate Judge that the ALJ was not obligated to analyze every checked box of the Mental Residual Functional Capacity Assessment Dr. Tilley completed, *see Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 563 (6th Cir. 2014), or expressly to include a discussion of each of the six factors set forth in 20 C.F.R. § 404.1527(c), the ALJ's analysis of Dr. Tilley's opinions fell short of indicating that "the ALJ considered the relevant factors in its determination" not to grant any weight to Dr. Tilley's opinions. *Ealy*, 594 F.3d at 514. The only reason the ALJ provided for not amending Plaintiff's RFC was that a

15

review of the text leading to the checked boxes for severe and marked limitations "reveal[ed] very little in the way of severely or significantly impaired function due to the claimant's psychological problems." A review of the text portion of his evaluation shows, however, that Dr. Tilley included rationale which could be found to support his opinions at least concerning Plaintiff's moderate limitations not included in the RFC, as well as could be found to support an opinion that the limitations Dr. Tilley labeled as severe were at least moderate. Such rationale includes Plaintiff's repeated inability to maintain work due to panic attacks, a full assessment of her based on a number of diagnostic techniques, and the observation that she presented as anxious, easily frustrated and irritable.

As explained above, an absence of any valid rationale for rejecting all of Dr. Tilley's opinions constitutes reversible error as it prejudices Plaintiff on the merits. To recognize substantial evidence as a defense to non-compliance with Agency regulations "would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir.2004). Upon remand, the ALJ is instructed to fulfill his obligations to weigh Dr. Tilley's opinions, and to show on the record that he considered the relevant factors in his determination.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff's Objection is hereby **SUSTAINED**, (Doc. 18), and the Court **REJECTS** the Magistrate Judge's **Report and Recommendation**. (Doc. 17). Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this decision.

IT IS SO ORDERED.

    s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
DATED:  September 25, 2015    **UNITED STATES DISTRICT JUDGE**